IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELA K. KELLEY,

        Plaintiff,

v.                                   Case No. 13-2237-SAC

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security which denied plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence in the record as a whole, and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). When supported by substantial evidence, the

Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). But the standard "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

The claimant shall be determined to be under a disability only if he can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents him from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do her previous work. The claimant is determined not to be disabled unless she shows she cannot perform her previous work. The fifth step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20 (2003).

The claimant bears the burden of proof through step four of the analysis. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can

perform other work that exists in the national economy. *Nielson,* 992 F.2d at 1120; *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson,* 987 F.2d at 1487.

## II. Procedural History

Plaintiff filed applications for disability insurance benefits and SSI alleging that at age 34 she became disabled due to fibromyalgia, chronic fatigue syndrome, and depression. At step one, the administrative law judge (ALJ) found that plaintiff had not engaged in substantial gainful activity since June 26, 2009, her alleged onset date. The ALJ found at step two that the plaintiff has severe impairments of degenerative joint disease of the cervical spine, fibromyalgia, dysthymia, and anxiety, but found at step three that those impairments did not meet or equal the severity of a listed impairment presumed severe enough to render one disabled.

Accordingly, the ALJ determined plaintiff's residual functional capacity (RFC) as follows:

> light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the ability to lift 20 pounds occasionally, 10 pounds frequently, sit 6 hours, stand 6 hours, and walk 6 hours in an 8 hour workday, never climb ladders, ropes, or scaffolds, occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl; avoid concentrated exposure to extreme cold, excessive vibration, hazardous machinery, and unprotected heights; unskilled work only with no more than occasional contact with the general public and co-workers.

Tr. 15. At step four, the ALJ found the plaintiff unable to perform her past relevant work, but found at step five that Plaintiff could perform other jobs

that exist in significant numbers in the national economy, including folding machine operator, collator operator, and inserting machine operator. The ALJ thus determined Plaintiff is not disabled.

## III. RFC

Plaintiff primarily challenges the ALJ's determination of her RFC.

### A. Supervisors

Plaintiff first contends that the ALJ erred in imposing no limitations on Plaintiff's ability to interact with supervisors, although he imposed limitations on her ability to interact with the general public and coworkers. (Tr. 15). Plaintiff contends that this unexplained omission violates SSR 96-8p, which requires the ALJ to identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis.

The ALJ's decision does not specifically address Plaintiff's ability to interact with supervisors and does not state why the ALJ would impose limitations on Plaintiff's ability to interact with the general public and co-workers but not with supervisors. Defendant argues that this omission gives rise to a reasonable inference that the ALJ found no limitations in this area.

> Where all of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, a court can reasonably believe that those functions that he omitted were those that were not limited.

*Fowler v. Astrue*, No. 07-1270-JTM, 2009 WL 722019, at *3 (D. Kan. Mar. 18, 2009), citing *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003).

5

The Court agrees. *See Roderick-Jones v. Astrue*, 2009 WL 2913586, at 5, 6 (D.Kan. 2009).

Plaintiff presents no evidence that she had significant limitations in her ability to respond to supervisors. *See* Pl.'s Br. at 14-15. *See Collins v. Chater*, 108 F.3d 341, 1997 WL 82480, at *1 (10th Cir. Feb. 27, 1997) ("[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal."). Instead, the record includes Plaintiff's statements in her functional reports that she could follow written and spoken instructions and that she got along pretty well with authority figures. Tr. 190, 191, 208, 209. The ALJ's tacit conclusion that Plaintiff was not limited in her ability to interact with supervisors is thus supported by the evidence.

**B. Lumbar Degenerative Disc Disease**

Plaintiff next contends that the ALJ should have included Plaintiff's lumbar degenerative disc disease in the RFC because objective findings confirmed that this disease produced tenderness, spasm, and decreased range of motion, warranting some limitations. *See* Tr. 400, 442, 448, 453, 454.

Although an ALJ is not required to include a claimant's diagnoses in the RFC, the functional limitations resulting from a claimant's diagnosed impairments must be included. *See* Social Security Ruling (SSR) 96-8p.

The ALJ expressly considered Plaintiff's report of a bulging disc in her lower back, but found Plaintiff's degenerative disc disease of the lumbar spine to be "non-severe" because her MRI showed only mild degenerative disc disease "that did not result in significant central spinal canal stenosis or neural foraminal stenosis at any level." (Tr.13). The ALJ noted that Plaintiff exhibited tenderness and spasm in her lumbar spine, but found that Plaintiff's allegations regarding the limitations imposed by her impairments were not supported by the evidence. Tr.16.

Plaintiff has not identified any functional limitations not already included in the RFC that she believes should be imposed due to her lumbar disease. The ALJ determined that Plaintiff's severe *and* non-severe impairments limited her to light work, lifting restrictions, occasional postural movements, but no climbing of ladders, ropes, or scaffolds (Tr. 15). These and other stated limitations sufficiently account for Plaintiff's non-severe lumbar impairment. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (finding no error where claimant did not allege—and the medical evidence did not suggest—functional limitations flowing from the impairment other than those already acknowledged by the ALJ.).

**C. Medical Opinions**

Plaintiff next contends that the RFC is unsupported by the substantial evidence of the record as a whole. Plaintiff focuses on the medical opinions.

7

### 1. Medical Opinions - No Functional Limitations

The parties discuss four medical opinions of physical impairments, three of which found no functional limitations. Dr. Goering concluded that "[t]he [medically determinable impairment] is fibromyalgia, functional limitations associated with this are not credible. Im[p]airment and limitations determined not severe." Tr. 354. Dr. Fortune, a consulting examiner, concluded that Plaintiff "would have no limitations of sustained work-related activities, including sitting, standing, walking, lifting, and carrying objects." Tr. 347. Dr. Jones, another consulting examiner, did not mention any severe impairment or functional limitations. Tr. 290-292.

### 2. Medical Opinion - Functional Limitations

Dr. Corder, Plaintiff's treating physician, is the sole physician who found functional limitations of any kind. He submitted two medical source statements which included his opinions that Plaintiff was limited to "less than sedentary work" with postural activities limited to an occasional basis, that she had several moderate to severe environmental limitations, and that she would need to lie down for several hours during each workday. Tr. 456-57.

The ALJ gave Dr. Corder's opinion "little weight." Although a treating physician's opinion is generally entitled to controlling weight, "[i]t is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial

8

evidence in the case record." *Purvis v. Colvin*, No. 12-2364-SAC, 2013 WL 3147642, at *5 (D. Kan. June 19, 2013) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). Treating source medical opinions must be weighed by use of the factors provided in 20 C.F.R. § 404.1527(d)(2), but the ALJ need not expressly discuss all those factors in deciding what weight to give a medical opinion. *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). After considering those factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. *Robinson v. Barnhart,* 366 F.3d 1078, 1082 (10th Cir. 2004).

The ALJ did so here, in stating the following reasons for giving Dr. Corder's opinion little weight: 1) Dr. Corder's assessment of Plaintiff's limitations appeared to be almost exclusively based on Plaintiff's subjective complaints; 2) his examination report contained no functional examination of the Plaintiff; 3) his opinions were inconsistent with the functional examinations in the reports of both consultative physical examiners who found her to have only minimal limitations based on her physical impairments; and 4) his opinions were inconsistent with the Plaintiff's daily activities that include performing household chores. Plaintiff challenges each of these reasons, so they are examined below.

### a. Subjective Complaints / No Functional Examination

Plaintiff first contends that Dr. Corder's opinion was not based solely on Plaintiff's subjective complaints but was also based on his own

observations and exams. *See* Tr. 456 (indicating he believes Plaintiff's complaints of pain, and that objective evidence, *i.e.*, tenderness, slow movements, and hyperreflexia, demonstrates a condition which could reasonably be expected to give rise to that degree of pain); Tr. 456-57 (noting plaintiff had lethargy and lack of alertness). But those observations appear to relate more to the existence, rather than to the severity, of Plaintiff's impairment or the extent of her ability to function with that impairment. The ALJ found that Dr. Corder's examination reports contained no functional examination of the Plaintiff, and Plaintiff does not challenge that finding or suggest that Dr. Corder conducted any similar examination. Plaintiff fails to show the Court any other testing, functional examination, or other factual basis supporting Dr. Corder's conclusions.

Plaintiff does not challenge the ALJ's finding that "her allegations regarding the limitations imposed by [her] impairments are not supported by the evidence of record." Tr. 16. A physician's reliance on a claimant's subjective reports, which the ALJ separately determined not to be credible, is a legitimate reason for discounting the weight given to a medical opinion. *Sitsler v. Astrue,* 410 F. App'x 112, 119 (10th Cir. 2011); *see also Oldham,* 509 F.3d at 1259.

Fibromyalgia is a unique disease that is necessarily diagnosed largely on the basis of the patients' reports and other symptoms. *See Gilbert v. Astrue,* 231 F. App'x 778, 783 (10th Cir. 2007) (stating that the "cause or

10

causes [of fibromyalgia] are unknown, there is no cure, and … its symptoms are entirely subjective."). But even in the case of "subjective diseases" such as fibromyalgia, neither the claimant's own word nor that of her treating physician is conclusive to establish disability. *See* Social Security Ruling ("SSR") 12–2p, 2012 WL 3104869, at *2–*3 (noting that an ALJ "cannot rely upon the physician's [fibromyalgia] diagnosis alone," that medical evidence "must document that the physician reviewed the person's medical history and conducted a physical exam," and that person met specific diagnostic criteria). Under the Commissioner's regulations, an ALJ may determine that chronic fatigue is a disabling condition only "when it is accompanied by medical signs or laboratory findings." SSR 99–2p, 1999 WL 271569, at *2. *Russell v. Astrue*, 506 Fed.Appx. 792, 794, 2012 WL 6720671, 2 (10th Cir. 2012). Similarly, before a person with fibromyalgia (FM) may be found disabled, he must present "sufficient objective evidence" to support that finding:

> FM is a common syndrome. When a person seeks disability benefits due in whole or in part to FM, we must properly consider the person's symptoms when we decide whether the person has an MDI of FM. As with any claim for disability benefits, before we find that a person with an MDI of FM is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.

SSR 12-2P. *See Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) ("While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations

11

imposed by the symptoms of such illnesses do lend themselves to objective analysis."), *quoting Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n. 5 (1st Cir. 2003).

Dr. Corder's reports lack the requisite objective evidence and fail to disclose the basis for his restrictions. Although "the lack of objective test findings noted by the ALJ is not *determinative* of the severity of her fibromyalgia," *Gilbert v. Astrue,* 231 Fed.Appx. 778, 784, 2007 WL 1068104, 4 (10th Cir. 2007) (emphasis added), that lack is nonetheless relevant here. An ALJ need not ignore reliable medical evidence in deference to subjective reports; nor is it unreasonable to expect some supporting evidence to buttress a claim of disability. An ALJ does not err in denying benefits where a claimant establishes the presence of fibromyalgia, but fails to present reasonable medical evidence concerning the severity of her condition or how it affected her ability to work. Thus, it was not error for the ALJ to discount Dr. Corder's opinion for his reliance on subjective complaints.

**b. Inconsistency with Other Physicians' Functional Examinations**

Regarding the ALJ's second reason, the Plaintiff tacitly agrees that Dr. Corder's opinions were inconsistent with those of the consultative examiners who conducted functional examinations and found Plaintiff to have no functional limitations. To this, Plaintiff argues that the consultative examiners' opinions were also inconsistent with the ALJ's conclusion, which found some functional limitations. Plaintiff suggests that the ALJ should

reject all the findings of the consultative examiners since the ALJ did not adopt their conclusions of no functional limitations. But an ALJ is not required to accept, *in toto*, any one medical opinion as to limitations, and may properly find, from all the evidence of record, limitations greater than those found by one physician or less than those found by another. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (finding "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").

Plaintiff also suggests that the ALJ should have determined whether the consulting physicians' opinions outweighed the treating physician's opinion – not the other way around - yet provides no authority for this proposition. The ALJ's duty is to consider all the evidence, and the manner in which he compares one doctor's opinion to another is not formulaic. Here, the ALJ fully discussed his reasons for his assignation of weight to the medical opinions in accordance with the regulations, and Plaintiff's arguments essentially ask this Court to reweigh the evidence, which this Court is not empowered to do. *See Oldham,* 509 F.3d at 1257–58.

### c. Activities of Daily Living

As to Plaintiff's activities of daily living, Plaintiff offers only that her ability to complete household chores on good days is not inconsistent with her being disabled. But her daily activities are nonetheless relevant evidence

to be considered by the ALJ. *See Romero v. Colvin,* \_\_ Fed.Appx. \_\_, 2014 WL 2210747 at 3 (10th Cir. 2014). And Plaintiff does not show the Court any longitudinal record inconsistent with the ALJ's finding that she can care for her own home, clean and cook, care for her personal hygiene, do her laundry, go shopping, and drive. *See* SSR 12-2P ("For a person with FM, we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have "bad days and good days.") Nor does Plaintiff point to any evidence in Dr. Corder's treatment notes to support his opinion that she cannot perform sedentary work. Rather, the examination reports in the record demonstrate that Plaintiff was more capable than Dr. Corder indicated. For the reasons stated above, the ALJ's decision not to give controlling weight to Dr. Corder's opinion was adequately explained, is supported by substantial evidence, and is free from legal error. The Court finds that the RFC is supported by substantial evidence in the record.

### IV. ALJ's Duty to Develop the Record

Plaintiff also faults the ALJ for not developing the record by obtaining more evidence as to Plaintiff's functional limitations. Plaintiff asserts that no medical evidence support the ALJ's decision, requiring the ALJ to obtain a consultative examination. But the Court has rejected Plaintiff's premise - that the ALJ is required to accept, *in toto*, either one medical opinion or another.

Additionally, it is the Plaintiff, not the Defendant, who bears the burden to provide evidence of her functional limitations. *Howard*, 379 F.3d at 948. Although an ALJ has a duty at times to properly develop the record, "the starting place must be the presence of some objective medical evidence in the record suggesting that existence of a condition which could have a material impact on the disability decision *requiring further investigation*." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (emphasis added). Here, the ALJ reviewed two consultative examinations. Nothing in Plaintiff's arguments or the medical record as a whole suggests that claimant's impairments required further investigation before the ALJ could determine what functional limitations, if any, existed as a result of them.

**V. Ability to Perform Other Work**

Plaintiff contends that she cannot perform the jobs cited by the vocational expert because "all three require the ability to repetitively and frequently reach and handle." Pl.'s Br. at 21. But Plaintiff cites no authority in support of this conclusion. The vocational expert did not mention any such requirements in her testimony, and Plaintiff's attorney did not ask the vocational expert any questions about reaching and handling. Tr. 36-40.

Nor does the record as a whole show any significant limitations in Plaintiff's ability to reach and handle. *See e.g.,* Tr. 190 (Plaintiff's statements in her function report do not note any problems with reaching or using her hands); Tr. 27-28 (Plaintiff testified at the hearing that she could not work

due to a back impairment, but did not mention any limitations in reaching or handling); Tr. 33-34 (Plaintiff testified at the hearing that she could lift two gallons of milk); Tr. 291, 348, 354 (Medical records show that Plaintiff had 55 to 85 pounds of grip strength in her right hand and 35 to 65 pounds in her left hand and preserved dexterity); Tr. 347 (Dr. Fortune concluded that Plaintiff could handle coins, doorknobs, and buttons with no problems and could handle fine tools and small parts). The vocational expert's testimony, coupled with the record as a whole, sufficiently supports the ALJ's finding that Plaintiff retained the RFC to make a successful adjustment to perform the jobs cited by the vocational expert .

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 22nd day of July, 2014, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge